# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**ISHMAEL CASH ROLLE, III,**

    **Plaintiff,**

**v.**                                         **Case No. 3:11cv21/MCR/CJK**

**SIMMON, et al.,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

This cause is before the court upon plaintiff's complaint (doc. 1), filed pursuant to 42 U.S.C. § 1983. Defendants, Sergeant Simmon, Officer M. Salon, and Detective Fortenberry, have filed a motion for summary judgment (doc. 27). Plaintiff has filed a response in opposition (doc. 30). After a careful review of the record and the arguments presented, the court concludes that defendants' motion for summary judgment should be GRANTED.

## THE COMPLAINT AND ALLEGATIONS

The complaint alleges that on August 10, 2010, following an incident in which plaintiff was struck by a car while riding his bike on Garden and L streets in Pensacola, the defendants arrested plaintiff and took him into custody. (Doc. 1, p. 5). As it happened, plaintiff was a suspect in several robberies that had occurred in the

surrounding area.[1] The defendants drove plaintiff to the Pensacola Police Department headquarters where he was then interrogated by defendant Fortenberry. (Doc. 1, p. 5). Plaintiff claims that as a result of being hit by a car, he suffered "from a head injury to the left side of [his] head, [his] left ear was scared [sic] and bleeding, [his] right big toe was fractured, [he] suffered from scraps [sic] and bruses [sic] to [his] left thigh, right leg, right hip, [his] left palm was punchered [sic] and bleeding, and [his] lower back was hurting real bad . . . ." (Doc. 1, p. 5). Plaintiff contends that despite these injuries, the defendants "failed" to get him any "medical treatment at that time, or any time. . . ." (Doc. 1, p. 5). Instead, defendants kept plaintiff in the interrogation room "until they got what they wanted from [plaintiff]." (Doc. 1, p. 5). Following the completion of plaintiff's interrogation at the police station, defendants escorted plaintiff to his home. (Doc. 1, pp. 5-6). Defendant Fortenberry and an unnamed detective subsequently–after acquiring plaintiff's consent–searched plaintiff's residence. (Doc. 1, p. 6). Upon completion of the search, defendant Fortenberry took plaintiff to the hospital to have his injuries treated. (Doc. 1, p. 6). Plaintiff argues defendants should have first taken him to the hospital for treatment prior to interrogating him or searching his residence. (Doc. 1, p. 6).

Plaintiff gave a more detailed description of the events at issue in his deposition (doc. 28-1) and interrogatories (doc. 28-2). Initially, plaintiff was being chased by his neighbor Willie Young ("Willie"). (Doc. 28-1, p. 13). Plaintiff was fleeing from Willie on a bike. (Doc. 28-1, p. 13). Plaintiff was also attempting to evade the police who were searching for an unknown (at that time) assailant

---

[1] Plaintiff was later convicted of those robberies, including the robbery for which the instant arrest occurred.

following a robbery. (Doc. 28-1, pp. 27-29). Plaintiff approached L and Garden streets and looked behind him in an effort to discern where Willie was located. (Doc. 28-1, p. 13). At that time, a car hit plaintiff and knocked him off his bike onto the ground. (Doc. 28-1, p. 13). Plaintiff hit his head on the ground. (Doc. 28-1, p. 13). The driver of the car proceeded to check on the plaintiff and see how he was doing. (Doc. 28-1, p. 14). Plaintiff, after a few moments, "jumped up" and looked around. (Doc. 28-1, p. 14). Plaintiff saw Willie, and in response, grabbed his bike and tried to flee. (Doc. 28-1, p. 14). At that point, plaintiff realized his foot was injured, but he was able to limp away. (Doc. 28-1, p. 22). Plaintiff left his bike on the side of the road, climbed over a fence, and walked to a parking garage located behind a building on Pace street. (Doc. 28-1, pp. 14, 25).

About five to ten minutes after reaching the parking garage, plaintiff was "standing up" and heard defendant Simmon "say[] something about get down, get down, get down, get down." (Doc. 28-1, p. 14). Defendant Simmon then tackled the defendant and handcuffed him on the ground. (Doc. 28-1, p. 14). Defendant Salon arrived at the scene, searched the plaintiff and put him into the back of the police car. (Doc. 28-1, p. 15). Plaintiff was then taken to the police station for interrogation. At that point, plaintiff was bleeding from his ear and "had a puncture" in his right hand. (Doc. 28-1, p. 15). Plaintiff first realized he was bleeding from his ear in the police car on the way to the police station. (Doc. 28-1, pp. 30-31). Plaintiff claims he had blood on his white t-shirt and had to wipe up his own blood in the interrogation room. (Doc. 28-1, pp. 15, 31). In the interrogation room, however, plaintiff did not complain about his injuries; instead, he discussed the burglary accusations against him. (Doc. 28-1, p. 33). Defendant Fortenberry entered into the room and asked

plaintiff if he would like a glass of water. (Doc. 28-1, p. 14). Later, defendant Fortenberry asked plaintiff what happened to him and plaintiff responded, "I got hit by a car." (Doc. 28-1, p. 15). Fortenberry then stated (according to plaintiff), "[y]ou didn't get hit by no car, there wasn't no car there." (Doc. 28-1, p. 16). Plaintiff admits he did not respond and "just left it like that." (Doc. 28-1, p. 16).

After his arrest, plaintiff did not say anything about his injuries or requiring medical care to the officers driving him to the police station. (Doc. 28-1, p. 32). Plaintiff further admits that after being taken into custody, the only visible sign he was injured was the blood dripping from his ear. (Doc. 28-1, pp. 35-36). Plaintiff indicated that his ear had stopped bleeding by the time he was in the interrogation room. (Doc. 28-1, pp. 34). Once in the interrogation room, plaintiff did not ask anybody to take him to the hospital or complain about his injuries. (Doc. 28-1, p. 33). Later, when the officers took plaintiff to his residence and searched his home, plaintiff again did not indicate he was injured or required medical care. (Doc. 28-1, pp. 37-38). Plaintiff posits that it was about four and a half hours at most from the time of his arrest until he was taken to the hospital. (Doc. 28-1, p. 38). Plaintiff does not allege that the defendants' delay in taking him to the hospital made his injuries worse; instead, plaintiff argues only that the defendants should have followed "the standard operations procedure of officials of the law." (Doc. 28-1, p. 42). Finally, plaintiff does not remember any doctor, nurse, or other hospital staff, at any point in time, indicating to him that his injuries were worsened by the defendants' alleged delay in taking him to the hospital. (Doc. 28-1, pp. 41-42, 47).

In his complaint, plaintiff alleges defendants: 1) failed to properly follow the Florida rules of criminal procedure, 2) failed to bring plaintiff to the hospital after he

was struck by a car and instead interrogated him for two and half hours, 3) deprived plaintiff of his "rights, privileges, or immunities secured by the constitution or laws of the United States," and 4) have not allowed plaintiff to go back to the hospital for a follow-up appointment despite plaintiffs continued head and back problems. (Doc. 1, p. 7). Plaintiff seeks "monetary relief" based on his pain and suffering, legal fees, hospital debts, and "monetary relief on the maximum amount thats [sic] allowed and awarded to this particular case." (Doc. 1, p. 7).

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 56, moved for summary judgment (doc. 27) against the plaintiff. Defendants assert that plaintiff's pleadings, deposition, medical records, and discovery responses establish that there are no genuine issues of material fact. The motion for summary judgment proceeds under the theory that plaintiff's claim of deliberate indifference to medical needs is unsupported by the evidence of record and that the defendants are entitled to qualified immunity. (Doc. 27, p. 5). Accordingly, defendants conclude, they are entitled to summary judgment as a matter of law. (Doc. 27, p. 1).

## RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff responds that the defendants were all aware that plaintiff had been struck by a car. Specifically, plaintiff points to defendant Salon's probable cause arrest report (doc. 30-1, pp. 8-9), defendant Salon's deposition (doc. 30-1, pp. 5-7), and defendant Simmon's deposition (doc. 30-1, pp. 1-4), to support his contention that defendants were aware he had been struck by a car prior to his arrest.

## ANALYSIS OF DEFENDANTS' SUMMARY JUDGMENT MOTION

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). To prevail on a motion for summary judgment, the movant must show that the plaintiff has offered no evidence to support an essential element of his case, or present affirmative evidence that plaintiff will be unable to prove one or more essential elements of the case at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). If the movant successfully negates an essential element of the plaintiff's case, the burden shifts to the plaintiff to come forward with evidence demonstrating a genuine issue of material fact for trial. *See id.*

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *See id.* at 248. A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See id.* "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

To that end, "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004). Likewise, "'unsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion'" and "does not create a genuine issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995)). Rather, the party opposing summary judgment must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See Celotex Corp.*, 477 U.S. at 333 n.3 ("Once the moving party has attacked whatever record evidence–if any–the nonmoving party purports to rely upon, the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."); *Anderson*, 477 U.S. at 250 (providing that the standard for granting summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict").

*Deliberate Indifference*

"To state a cause of action under § 1983, a plaintiff must allege that (1) there was an act or omission that deprived him of a constitutional right, privilege, or immunity and (2) the act or omission was committed by a person acting under color of state law." *Evans v. St. Lucie Cnty. Jail*, 448 F. App'x 971, 973 (11th Cir. 2011)

(citing *Hale v. Tallapossa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 2005)). Plaintiff asserts claims of deliberate indifference to serious medical needs, which arise under the Eighth Amendment. A challenge to the failure to provide medical care requires a two-prong showing: "an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'" *See Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Where, as here, the claim is for deliberate indifference to a serious medical need, the plaintiff must also show causation. *See Milton v. Turner*, 445 F. App'x 159, 161 (11th Cir. 2011) ("To state a claim of deliberate indifference, a plaintiff must allege: (1) a serious medical need; (2) deliberate indifference to that need by the defendants; and (3) causation between the defendants' indifference and the plaintiff's injury.").

The objective component of a claim alleging inadequate medical care is difficult to meet. "First, a plaintiff must demonstrate 'an objectively serious medical need, one that, if left unattended, poses a substantial risk of serious harm.'" *Evans*, 448 F. App'x at 974 (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (quotations omitted)). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation omitted)). "Second, the plaintiff must show that the response 'was poor enough to constitute an unnecessary and wanton infliction of pain.'" *Id.* (quoting *Taylor*, 221 F.3d at 1258 (quotation omitted)). "The level of care exercised by the official must be worse than mere

'accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.'" *Id.* (quoting *Taylor*, 221 F.3d at 1258) (quotations omitted)).

As described generally above, the subjective component of a claim alleging inadequate medical care requires that "the official had a 'sufficiently culpable state of mind.'" *Thomas*, 614 F.3d at 1304 (quoting *Farmer*, 511 U.S. at 834) (internal citations and quotations omitted)). More specifically, "the relevant state of mind for purposes of liability is deliberate indifference." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)). "This has three components: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.'" *Evans*, 448 F. App'x at 974 (quoting *Farrow*, 320 F.3d at 1245 (quotations omitted)). The Supreme Court has emphasized that the official must have been actually aware of the risk of harm: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer*, 511 U.S. at 837.

First, plaintiff fails to sufficiently allege the existence of the essential elements of a claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment. Plaintiff did not disclose his injuries with the officers driving him to the police station (doc. 28-1, p. 32), did not request to be taken to the hospital or complain about his injuries when he was being interrogated (doc. 28-1, p. 33), and following interrogation, while his house was being searched, did not indicate he was injured or needed to go to the hospital. (Doc. 28-1, pp. 37-38). Plaintiff's outward physical injuries were not sufficient to alert the defendants to his professed yet undisclosed need to go to the hospital. Plaintiff posits that after being taken into

custody, the only visible sign that he was injured was the blood dripping from his ear. Plaintiff, however, had stopped bleeding by the time he was in the interrogation room. (Doc. 28-1, pp. 34-36). Plaintiff argues that defendants were aware he had been hit by a car prior to being arrested. While defendants were aware that plaintiff had been struck by a car,[2] defendants were also aware plaintiff had, following the collision, fled the scene of the accident, climbed over a fence, and continued to evade law enforcement. Such actions are not indicative of someone in need of immediate medical attention. Viewed in a light most favorable to plaintiff, these defendants had no indication that plaintiff had suffered any sort of significant injury, much less one that required immediate medical attention.

Plaintiff has not shown that the defendants had subjective knowledge of a risk of serious harm or that, if they did, they chose to disregard that risk and, in doing so, engaged in conduct that was beyond mere negligence. *See Evans*, 448 F. App'x at 974. Indeed, given plaintiff's description of the injury and the resulting symptoms, all of which, outwardly, had ceased by the time he was taken into the interrogation room, defendants could not have had the requisite awareness of the severity of plaintiff's injury. Even assuming that defendants should have further inquired into plaintiff's injuries, such error is one of negligence and not of deliberate indifference. *See Mann v. Hillsborough County Sheriff's Office*, 946 F. Supp. 962, 968-69 (M.D. Fla. 1996) ("Negligent conduct does not constitute the type of abuse of government power that is cognizable under § 1983. Something more akin to deliberate indifference is required. Deliberate indifference implies knowledge, and knowledge

---

[2] While defendants Salon and Simmons were aware plaintiff had been struck by a car prior to being arrested, the record does not evidence that defendant Fortenberry had such knowledge.

constitutes conduct above that of mere negligence.") (citations omitted). Thus, plaintiff has not satisfied the subjective component of a claim alleging inadequate medical care. *See Thomas*, 614 F.3d at 1304.

Moreover, plaintiff has failed to make any showing that the supposed delay in treatment caused additional symptoms or deterioration of his condition. *See Milton*, 445 F. App'x at 162 ("'[A] serious medical need is determined by whether a delay in treating the need worsens the condition.'" (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009))). Plaintiff readily admits that the defendants' delay in taking him to the hospital did not make his injuries worse.[3] (Doc. 28-1, p. 42). Further, plaintiff does not remember any doctor, nurse, or other hospital staff, at any point in time, who indicated his injuries were worsened by the defendants' delay in taking him to the hospital for treatment. (Doc. 28-1, pp. 41-42, 47). Plaintiff does not assert facts that would support an inference that the injury to his head and back, fractured toe, and bleeding ear (which had stopped bleeding by the time he had reached the interrogation room), were "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *See id.* (articulating the alternative standard—applied where the plaintiff does not allege that a delay in treating worsened the condition—for determining whether a medical need is "serious"). Nothing in plaintiff's pleadings demonstrates he informed the defendants of such injuries or gave the defendants any indication he was injured to such a serious degree

---

[3] Such an admission demonstrates that plaintiff's claim lacks a sufficient causal nexus between the claimed indifference of defendants and his injury. *See Thomas v. Harris*, 399 F. App'x 508 (11th Cir. 2010); *Milton*, 445 F. App'x at 162 (requiring plaintiff claiming deliberate indifference to allege "causation between the defendants' indifference and the plaintiff's injury" (quoting *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010)).

and required medical attention. Similarly, only speculation would support a conclusion that law enforcement officials somehow should have divined any such serious injury, in light of all the facts known to them. *See Fernandez v. Metro Dade Police Dept.*, 397 F. App'x 507, 512-13 (11th Cir. 2010) (finding that plaintiff's bloody nose and mouth, both of which eventually stopped, coupled with plaintiff's facial bruising, pain, disorientation, and blood clogs in his nose, were not an "objectively serious medical need"). Plaintiff's medical records from Baptist Hospital evidenced only a hand laceration and toe fracture, neither of which were brought to the attention of law enforcement officials while the defendant was in custody. Consequently, plaintiff has not satisfied the objective component of a claim alleging inadequate medical care. *See Taylor*, 221 F.3d at 1258. As a matter of law, then, the defendants were not deliberately indifferent to plaintiff's medical needs.

*Qualified Immunity*

In addition to showing that they were not deliberately indifferent to plaintiff's medical needs, defendants also argue they are immune from suit and entitled to summary judgment because of qualified immunity. Although this case may be decided solely on the foregoing analysis, the undersigned will also review the qualified immunity claim. The doctrine of qualified immunity is a guarantee of fair warning. *McElligott v. Foley,* 182 F.3d 1248, 1260 (11th Cir. 1999). Qualified immunity shields government officials from individual capacity suits against them for acts that do not violate a clearly established constitutional right of which a reasonable person would be aware given the circumstances and information possessed by the official at the time of the conduct. *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *Conn v. Gabbert,* 526 U.S. 286, 119 S. Ct. 1292, 1295, 143 L.

Ed. 2d 399 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). Qualified immunity ensures that individuals can reasonably anticipate when their conduct may give rise to liability. To that end, liability attaches only if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. *McElligott*, 182 F.3d at 1260 (citing *United States v. Lanier,* 520 U.S. 259, 270, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)). A public official seeking qualified immunity "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*

Courts apply a two-pronged test when evaluating a claim of qualified immunity: (1) whether, on the facts alleged, a constitutional right was violated; and (2) whether the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). The court may exercise its discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009). The court may find qualified immunity if the plaintiff fails to carry his burden on either of the two prongs. *See, e.g., Pearson*, 129 S. Ct. at 822-23 (evaluating only *Saucier*'s second prong and holding that law enforcement officers were entitled to qualified immunity because the unlawfulness of their conduct was not clearly established). When a defendant moves for summary judgment based on qualified immunity, the court "resolve[s] all issues of material fact

in favor of the plaintiff, and then determine[s] the legal question of whether the defendant is entitled to qualified immunity under that version of the facts." *Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1327 (11th Cir. 2006) (quotation marks omitted).

Here, the defendants have demonstrated that they were acting within their discretionary authority; thus, under the prevailing authorities, plaintiff bears the burden of showing that qualified immunity is not appropriate. As discussed previously, and dispositive of this issue as well, plaintiff has not shown that the defendants violated his constitutional rights by not immediately taking him to the hospital. *See supra* pp. 8-12. The defendants, therefore, are entitled to qualified immunity.

Having determined that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, the court recommends that summary judgment be granted in favor of all defendants as to the totality of plaintiff's claims. *See* FED. R. CIV. P. 56(c)(2), 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."); *Celotex Corp.*, 477 U.S. at 324 ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'").

Accordingly, it is respectfully RECOMMENDED:

1. That defendants' motion for summary judgment (doc. 27) be GRANTED.

2. Consistent with this order, that the clerk be directed to enter summary final judgment in favor of all defendants.

3. That the clerk be directed to close the file.

At Pensacola, Florida this 17th day of September, 2013.

/s/ *Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of any objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).